UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

_____

MONIQUE BUNN                                   )
              Plaintiff,                          )
v.                                             )
                                               ) COMPLAINT
DAMON ANTHONY DASH,                            )
DAME DASH STUDIOS d/b/a                        )
POPPINGTON LLC, RAQUEL HORN  and               )
THE DASH GROUP LLC                             )
            Defendants.                         )
_____)

## JURISDICTION

1.      Jurisdiction is based on diversity of citizenship. The amount in controversy exceeds One Million Dollars ($1,000,000.00).

2.      The case is related to *Bunn v. Dash, et al.*, 2:20-cv-07389-DMG-JC, which was filed in the Southern District in New York in 2019 and transferred to this Court in 2020. ("The Litigation").

## PARTIES

3.      Monique Bunn ("Bunn") is a resident of Pennsylvania.

4.      Damon Anthony Dash ("Dash") is a California resident and has the addresses: 13547 Ventura Blvd., Ste 199, Sherman Oaks, CA 91423 and 11975 Crest Place, Beverly Hills, CA 90210.

5.      Dame Dash Studios, damedashstudios.com ("DDS") is, upon information and belief, an unincorporated business entity and the alter ego of Dash and/or a division of Poppington LLC.  DDS is not a LLC, LLP or incorporated in any state.

6.      Poppington LLC ("Poppington") is a New York limited liability company, New York DOS ID 4527652 and has foreign entity registration in

1

the State of California. Rocket Lawyer, Inc. is the registered agent for Poppington. Poppington is owned by Dash and Raquel Horn.

7.     Raquel Horn ("Horn") is a California resident and has the address: 11975 Crest Place, Beverly Hills, CA 90210.

8.     The Dash Group LLC is a California entity, owned and operated by Dash and Horn. The registered agent for DG is Liana Zelli, Esq., 450 N. Brand Blvd. Ste, 600, Glendale, CA 91203. DG was created in June 2020. The Dash Group LLC is owned by Dash and Horn. The Dash Group LLC, Horn, Dash and Poppington are alter egos of each other.

## FACTS

9.     Bunn is a professional photographer, who is well known in the entertainment industry for working with some of the top names in hip hop music.  Bunn's expansive portfolio, built over 20 years, includes photographs of Mary J. Blige, Sean "Diddy" Combs, Queen Latifah, MC Lyte, Mase, Quincy Jones, Teddy Riley, Lil Kim, The Fugees, Missy Elliot, Xscape, Lenny Kravitz, Lyor Cohen, Russell Simmons, Lauren Hill, KRS One, Outkast, LL Cool J, Q-Tip, The Beatles, President George Bush (during his military career), and many others.

10.     In April 2019, Dash asked Bunn to do photography for Poppington and DDS.     Horn booked and paid for Bunn's flight to Los Angeles to perform the services.

11.     Upon arrival in Los Angeles on April 18, 2019, Dash, Horn, Bunn and others went to the Poppington/DDS studios.  Having literally just arrived from Pennsylvania, Bunn had her personal belongings as well as her professional equipment and materials with her. The professional and personal items that were in Bunn's possession and that she brought to the Poppington/DDS studios included the following:

-Mac pro computer
-PC laptop
-Mac pro internal hard drive
-mac desktop internal hard drive
-external hard drive
-internal hard drive

-35-40 cd's of images (each hold 600 images)
-30-35 sd cards (each hold 1000+ images)
-Nikon D70
-zoom lens
-Kindle tablet
-wide/fish eye lens
-handheld light meter
-digital converter box
-Final Cut pro
-Office
-Photo mechanic
-varies sized printed images color and b&w
-75+ pieces of one of a kind/limited memorable and prints, including never
seen prints of the Beatles, Count Basie and President Bush during his
military career.
-3 wrapped bundles of personal/work projects
-irreplaceable WWII/ Korea/ Vietnam Wallet
-bank cards and personal information
-jewelry bag
-diamond earrings
-diamond ring
-diamond bracelet

12.     Dash and others interviewed various women for projects at the
Poppington/DDS studios. Bunn set up her equipment and began to get a feel
for the project.  At the conclusion of the evening, Dash and others brought
Bunn back to the Dash residence where Bunn would stay during the trip.
Bunn's equipment and many personal items remained at Defendants' studios
after Bunn left the studios on April 18, 2019.

**Sexual Assault of April 18, 2019**

13.     In the late evening of April 18, 2019, Dash sexually assaulted Bunn. While
Bunn was sleeping, Dash approached Bunn and placed his hand on Bunn's breasts
and placed his hands/fingers on Bunn's buttocks. Dash did not have the permission
or consent to touch Bunn's sexual organs.  Dash was wearing a robe and had no
underwear on. Dash had been drinking alcohol and smoking marijuana all day.

14.     Startled awake by the unwanted touching by Dash, Bunn was able to get
Dash's hands off her breasts and buttocks.  Dash backed up and asked Bunn, "what

are you doing?"  Bunn responded, "I am sleeping" and "I will fight you." Dash then left the room.

15.     Bunn was angry and frustrated by Dash's offensive and unwanted touching. Bunn stayed at the Dash residence and did not sleep that evening.

**Events of April 19, 2019**

16.     The following day, Bunn needed additional equipment for the photography shoot for Defendants. Defendants' chauffer took Bunn to the Apple Store and purchased approximately $3,000 of equipment with Defendants' credit card.

17.     Bunn brought the equipment back to the Poppington/DDS studios, where she worked the remainder of the day. After wrapping for the evening, Bunn brought the Apple Store items to the Dash residence.

**Events of April 20, 2019**

18.     Bunn spent most of April 20, 2019 preparing to shoot that evening for Poppington/DDS. Around 11:00 p.m., Dash, Bunn and Horn discussed the Apple Store purchase. Horn was unhappy with the amount, but Bunn informed Horn that Dash approved the purchases. Bunn provided Horn with the items purchased from the Apple Store as both Dash and Horn were intoxicated/high and Dash was being belligerent.

19.     Minutes later, the Dash chauffeur approached Bunn and informed her that Dash and Horn wanted her to leave the premises. Defendants called Uber to take Bunn to a hotel. Bunn asked to stop at the Poppington/DDS studios to retrieve her equipment and personal items, but Dash and Horn refused.

20.     Defendants informed Bunn that they would send Bunn her belongings the following week (after Easter 2019).  That never happened.

21.     On several occasions, Bunn has requested that Defendants return her belongings, but Defendants have ignored her. See Exhibit A.  To date, Defendants have not returned Bunn's belongings.

22.     On the drives owned by Plaintiff were over twenty (20) years of hip-hop culture photography and other items. Defendants have stolen photographs of Mary J. Blige, Sean "Diddy" Combs, Queen Latifah, MC Lyte, Mase, Quincy Jones, Teddy Riley, Lil Kim, The Fugees, Missy Elliot, Xscape, Lenny Kravitz, Lyor Cohen, Russell Simmons, Lauren Hill, KRS One, Outkast, LL Cool J, Q-Tip, The Beatles and President George Bush (during his military career), and many others.

23.     Defendants have converted over 100,000 photographs, Bunn's personal belongings, and professional photography equipment. Defendants placed one of Bunn's previously licensed photographs on their social media. Exhibit B.

## Defendants Defame Bunn By Accusing Her Of Being A Thief

24.     On December 27, 2019, after being sued by Bunn for the events described above in The Litigation, Dash, Poppington and Horn posted online a "movie" that they made with subtitles, from footage they shot on April 20, 2019.  The December 27, 2019 subtitled "movie" depicted Dash and Horn ranting about Bunn.  Screenshots of the "movie appear at Exhibit C.

25.     Defendants wanted to publicly shame Bunn and retaliate against Bunn for filing The Litigation.

26.     In their "movie" of December 27, 2019, Poppington, Dash and Horn falsely and wrongfully accused Bunn of attempting to steal from them and disseminated the footage via multiple media outlets. One such media outlet was worldstarhiphop.com. See https://www.worldstarhiphop.com/videos/video.php?v=wshh521J2N5gO2veKXNi. The "movie" has been viewed over one million (1,000,000) times.

27.     Defendants indicated they would return Bunn's belongs in the "movie" (Exhibit C), but failed to do so.

28.     Defendants' actions were designed and intended to portray Plaintiff in a false light and present a negative image of Plaintiff.  The Defendants have defamed Bunn.

29.     Defendants have caused Plaintiff public ridicule. Dash and Horn engaged in the defamatory action in their individual capacity and as members of Poppington. The video appeared on the social media accounts for Poppington/DDS and Dash.

## Liability Of The Dash Group LLC

30.     Dash and Horn created The Dash Group LLC in June 2020.  Soon thereafter, Poppington began to assign its assets to The Dash Group LLC.

31.     Attached as Exhibit D is a true and correct copy of an email dated July 14, 2020 from Attorney John Fogleman, Counsel for Vimeo, indicating that Poppington assigned its account to The Dash Group LLC, on June 24, 2020. At the time of the assignment to The Dash Group LLC, Vimeo was holding approximately Eleven Thousand Dollars ($11,000.00) that belonged to Poppington .

32.     From approximately August 2020 through November 2020, Poppington removed all of its assets from its account at JP Morgan/Chase ("Chase"), and upon information and belief, placed the funds in The Dash Group LLC's account at Chase.

33.     As Dash and his girlfriend Horn control both entities, it was easy to transfer all of the Poppington's assets to The Dash Group LLC.

34.     In November 2020, upon information and belief, it was learned that Poppington had been commingling funds with The Dash Group LLC as early as July 2020.  For example, Poppington received a wire transfer dated July 6, 2020 referencing "The Dash Group" into its Chase bank account.

35.     In early December 2020, it was learned that Poppington had previously closed its bank accounts at Chase, in November 2020, Exhibit E, and upon information and belief, transferred all of its money to The Dash Group LLC.

36.     Poppington transferred all of its assets to The Dash Group LLC on or before December 8, 2020, leaving Poppington financially insolvent. See Notice from Chase dated December 8, 2020 and The Dash Group LLC. Exhibit F.

37.     The Dash Group LLC encouraged and assisted Poppington in hiding funds and commingled funds.

38.   The Dash Group LLC was created for a fraudulent purpose and maintains funds that belong to Dash and Poppington.

39.   The Dash Group LLC aided Dash and Poppington in their efforts to avoid paying creditors.

40.   The Dash Group LLC willfully assisted Poppington and allowed Poppington to place its funds into The Dash Group LLC account at Chase.

41.   The Dash Group LLC has merged with Poppington and is the alter ego and successor in interest to Poppington LLC.

42.   The Dash Group LLC and Poppington have operated as one entity since the creation of The Dash Group LLC in June 2020. Hence, The Dash Group LLC is responsible for the debt of Poppington and Dash.

43.   Upon information and belief, the Chase bank records that will further establish the transfers of funds from June 2020 through December 2020 between Poppington and The Dash Group LLC.

44.   The Dash Group LLC had assisted and encouraged Poppington in its efforts to hide funds and has distributed funds to their members, Dash and Horn.

45.   The Dash Group LLC was complicit in the plans of Dash and Poppington to hide assets and is the successor in interest to Poppington and/or has merged with Poppington.


## COUNT I
## DEFAMATION OF CHARACTER-SLANDER
## AGAINST POPPINGTION, THE DASH GROUP LLC, DASH AND HORN
## UNDER PENNSYLVANIA LAW

46.   Plaintiff repeats and realleges each of the preceding paragraphs 1-45.

47.   Defendants published and stated derogatory comments about Bunn indicating that Bunn attempted to rob them. The statements were not privileged and were designed to harm Bunn.

48.     Defendants statements are untrue and false.

49.     Defendants' actions have damaged the reputation of Bunn.

50.     Defendants' actions were designed to harm Bunn.

51.     Defendants' actions were done with malice and disregard for the truth.

52.     Defendants have engaged in reckless behavior and disregard for the truth.

53.     The statements of Dash have defamed Bunn and is prejudicial to her career and caused her public ridicule.

54.     Bunn has been unable to support her family due to the actions of Dash, Horn and Poppington.

55.     The Defendants engaged in "per se" defamation of Bunn.

## COUNT II
## DEFAMATION OF CHARACTER-LIBEL
## AGAINST POPPINGTON, THE DASH GROUP LLC, DASH AND HORN
## UNDER PENNSYLVANIA LAW

56.     Bunn repeats and realleges each of the preceding paragraphs 1-55.

57.     Defendants published and stated derogatory comments about Bunn claiming that Bunn attempted to rob them. The statements were not privileged and designed to harm Bunn's business and have her publicly ridiculed.

58.     Defendants' statements are untrue and false.

59.     Defendants' actions have damaged the reputation of Bunn.

60.     Defendants' actions were designed to harm Bunn.

61.     Defendants' actions were done with malice and disregard for the truth.

62.     Defendants have engaged in reckless behavior and disregard for the truth.

63.    Defendants actions have damaged Brown in her busines and caused her public ridicule.

## COUNT III
## DE FACTO MERGER LIABILITY AGAINST
## THE DASH GROUP LLC AND POPPINGTON LLC

64.    Bunn repeats allegations in paragraphs 1-63 above.

65.    The *de facto* merger doctrine … provides liability for The Dash Group LLC. When a purported asset sale "is in substance 'a consolidation or merger of seller and purchaser,'" U.S. Supreme Court, in *Wellness International Network Ltd. v. Sharif*, 135 S. Ct. 1932, 1939 (2015), *John Deere Shared Services Inc. v. Success Apparel LLC*, 2015 WL 6656932, at *5-7 (S.D.N.Y. Oct. 30, 2015) courts will treat it as a *de facto* merger. 2015 WL 6656932, at *6, quoting *Schumacher v. Richards Shear Co.*, 59 N.Y. 2d 239, 245 (1983). Moreover, "continuity of ownership is a necessary precondition to finding a *de facto* merger." *Id.*

66.    California is more willing to find de facto merger if the court concludes notwithstanding the structure of the transaction, that an asset sale produces the same result as a merger. California recognizes the de facto merger doctrine in successor liability cases. In *Marks v. Minnesota Mining & Mfg. Co.*, 232 Cal. Rptr. 594 (Cal. App. 1st Dist. 1986).

67.  The Dash Group LLC has merged with Poppington.

68.  The Dash Group LLC has obtained funds due Poppington and has received assignments relating to Poppington accounts, such as Vimeo.

69.  Dash and Horn own both entities and commingled the entities.

70.  All of Poppington's funds were deposited into The Dash Group LLC, leaving Poppington insolvent in November/December 2020.

77.  Due to the merger of Poppington and The Dash Group LLC, The Dash Group LLC is responsible for the debt of Poppington.

WHEREFORE, The Plaintiff's demand a jury trial and the following:

1.    Judgment on all counts and amount to be determined by the Court;
2.    Interest;
3.    Attorneys Fees;
4.    Compensatory, Treble and Punitive damages; and,
5.    Any other relief this Court deems just and equitable.


MONIQUE BUNN

By Her Attorneys,
/s/ Dina Adham
Dina Adham, Esq.
Law Offices of Dina Adham
1230 Rosecrans Avenue, Suite 300
PMB #698
Manhattan Beach, CA 90266
(310) 384-0843
dadham@adhamlawgroup.com


December 23, 2020          *Counsel for Plaintiff*

# EXHIBIT A



# EXHIBIT B



# EXHIBIT C









# EXHIBIT D

**From:** John Fogleman [mailto:john@vimeo.com]
**Sent:** Tuesday, July 14, 2020 4:45 PM
**To:** Christopher Brown <cbrown@brownrosen.com>
**Subject:** Re: Brooks v. Dash 19-1944 JSR (SDNY)

Chris,

On behalf of Vimeo, Inc., I hereby acknowledge receipt of:

1. Your letter dated July 7, 2020; and
2. The judgment and writ of execution in the above-captioned matter dated April 15, 2020 and June 17, 2020, respectively.

As we discussed by telephone, the subject Vimeo OTT account, titled Dame Dash Studios and available at https://www.damedashstudios.com, was assigned by Poppington LLC to The Dash Group LLC effective on or about June 24, 2020.  I understand that your client disputes the validity of this assignment and will seek additional remedies from the court to enforce its rights.  In the meantime, Vimeo has placed a hold on the funds it has collected and not yet disbursed to The Dash Group LLC.

Should you have any questions, please feel free to contact me directly.  Vimeo reserves all rights.

Best regards,

John Fogleman
Corporate Counsel
Vimeo, Inc.
555 West 18th Street
New York, New York 10011
212-524-7153
john@vimeo.com

# EXHIBIT E

LETTER FROM CHASE
RE: POPPINGTON CLOSED BANK ACCOUNTS
FILED SEPERATELY

# EXHIBIT F

